1  RONALD RUS, #67369
   rrus@rusmiliband.com
2  JOEL S. MILIBAND, #77438
   jmiliband@rusmiliband.com
3  LEO J. PRESIADO, #166721
   lpresiado@rusmiliband.com
4  RUS, MILIBAND & SMITH
   A Professional Corporation
5  Seventh Floor
   2211 Michelson Drive
6  Irvine, California 92612
   Telephone:   (949) 752-7100
7  Facsimile:   (949) 252-1514

8

9  Attorneys for Plaintiff
   MICHAEL R. DANZI

10

11             UNITED STATES DISTRICT COURT

12     CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

13

14  MICHAEL R. DANZI, an individual, )   CASE NO. SA CV 09-0039 CJC
                                     )   (RNBx)
15             Plaintiff,            )
                                     )
16  vs.                             )   **OPPOSITION TO MOTION TO**
                                     )   **DISMISS PLAINTIFF'S**
17  HIGHLAND CAPITAL                )   **COMPLAINT; DECLARATIONS**
    MANAGEMENT, L.P., a Delaware     )   **OF RONALD RUS; JOEL S.**
18  limited partnership;            )   **MILIBAND AND MICHAEL R.**
    HIGHLAND CRUSADER              )   **DANZI**
19  PARTNERS, L.P., a Bermuda limited)
    partnership;                    )
20  HIGHLAND CREDIT STRATEGIES )
    MASTER FUND, L.P., a Bermuda    )   Date:      March 2, 2009
21  limited partnership;            )   Time:      1:30 p.m.
    NEXBANK, SSB, a Texas chartered  )   Ctrm:      9B
22  savings bank,                   )
                                     )
23             Defendants.          )
                                     )
24  _____ )

25

26

27

28

OPPOSITION TO MOTION TO
                                          DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

**Page**

1.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

2.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . -3-

   A.   The Relationship Between the Parties . . . . . . . . . . . . . . . . . -3-

   B.   Plaintiff's Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

   C.   Defendants' Failure to Timely Meet and Confer . . . . . . . . . . -4-

3.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

   A.   The Motion Should Be Denied For Failure to Comply With Local
        Rule 7-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

   B.   The Motion Should Be Denied Because Plaintiff Is Not Required
        To Plead Facts Demonstrating Personal Jurisdiction or Venue   . . -7-

   C.   Notwithstanding Defendants' Misunderstanding Of The Pleading
        Requirements, Sufficient Facts Exist Establishing Personal
        Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

   D.   Notwithstanding Defendants' Misunderstanding Of The Pleading
        Requirements, Sufficient Facts Exist Establishing Venue . . . . . -11-

4.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

DECLARATION OF RONALD RUS . . . . . . . . . . . . . . . . . . . . . . -13-

DECLARATION OF JOEL S. MILIBAND . . . . . . . . . . . . . . . . . . -15-

DECLARATION OF MICHAEL R. DANZI . . . . . . . . . . . . . . . . . . -16-

OPPOSITION TO MOTION TO
DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page(s)**

*American Tobacco Company v. Patterson*,
456 U.S. 63 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . 8

*Harris Rutsky & Co. Insurance Services v. Bell & Clements, Ltd.*,
328 F.3d 1122 (9th Cir. 2003) . . . . . . . . . . . . . . . . . 8

*Myers v. Bennett Law Offices*,
238 F.3d 1068 (9th Cir. 2001) . . . . . . . . . . . . . . . . . 11

*Panavision Int'l, L.P. v. Toeppen*,
945 F. Supp. 1296 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir. 1998) . . 11

*Stirling Homex Corporation v. Homasote Company*,
437 F.2d 87 (2nd Cir. 1971) . . . . . . . . . . . . . . . . . . . . 7, 8

## FEDERAL STATUTES

FRCP 6(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

FRCP 7-3 . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 6, 13, 14, 15

FRCP 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

FRCP 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

FRCP 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

FRCP 84 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1391(a)(2) . . . . . . . . . . . . . . . . . . . . . 11, 12

28 U.S.C. § 1391(c) . . . . . . . . . . . . . . . . . . . . . . . 11, 12

OPPOSITION TO MOTION TO
DISMISS PLAINTIFF'S COMPLAINT

1    Plaintiff Michael R. Danzi ("Plaintiff") opposes the Motion to

2  Dismiss Plaintiff's Complaint filed by Defendants Highland Capital Management,

3  L.P.("Highland Capital"), Highland Crusader Partners, L.P. ("Highland

4  Crusader"), Highland Credit Strategies Master Fund, L.P. ("Highland Credit

5  Strategies") (Highland Capital, Highland Crusader and Highland Credit

6  Strategies are collectively referred to as the "Highland Defendants"), and

7  NexBank, SSB ("NexBank") (collectively, "Defendants") as follows:

8  1.    INTRODUCTION

9    Defendants' Motion is a misguided attempt to forum shop the

10  disputes of the parties.  The Motion is not Defendants' first attempt to derail the

11  adjudication of Plaintiff's claims.  Defendants' first effort was launched on an

12  *ex parte* basis in the State of Delaware nearly two weeks after the commencement

13  of this case by the initiation of an action in the Court of Chancery of the State of

14  Delaware asserting claims that not only mirror the allegations of Plaintiff's

15  Complaint in this Court, but are also clearly compulsory counterclaims in this

16  case.

17    Defendants' insistence that this case may only properly be brought in

18  the Northern District of Texas is belied by their Delaware filing.  Indeed, this

19  Motion was hastily filed only after, and no doubt because, the Delaware court

20  declined to grant them the *ex parte* relief they sought.

21    Defendants' Motion is procedurally and substantively deficient.

22  First, Defendants admit they failed to timely meet and confer with counsel for

23  Plaintiff as required by Local Rule 7-3 (no doubt because they expected to gain

24  an advantage with their Delaware maneuver and hoped not to respond here at

25  all).  Second, the Motion is wholly premised on the notion that Plaintiff is

26  required to plead facts establishing personal jurisdiction and venue – Plaintiff is

27  not.  Finally, though not required by the Federal Rules of Civil Procedure or

28  / / /

1  otherwise, sufficient facts exist establishing that this Court maintains personal

2  jurisdiction over Defendants and that this Court is the proper venue for this case.

3  2.   STATEMENT OF FACTS

4        A.   The Relationship Between the Parties

5              On or about June 2, 2007, Plaintiff and Defendants Highland

6  Crusader and Highland Credit Strategies formed Legacy Pharmaceuticals

7  International, LLC ("Legacy") in connection with the acquisition of two separate

8  pharmaceutical plants from Orange County, California headquartered Valeant

9  Pharmaceuticals International.  The acquisition was consummated through

10  Legacy's wholly-owned operating company, Legacy Pharmaceuticals

11  International GmbH ("Legacy GmbH"), and its wholly-owned subsidiary Solco

12  Pharmaceuticals Switzerland GmbH.  Plaintiff, an Orange County, California

13  resident, holds an approximate 45% member interest in Legacy and is a manager

14  of Legacy, as well as its President and Chief Executive Officer.  Plaintiff is a

15  member of the board of directors of Legacy GmbH, and is also its President and

16  Chief Executive Officer.  Legacy has been and continues to be operated by

17  Plaintiff from offices in Orange County, California, where its books and records

18  are located.  The only U.S. office of Legacy GmbH is in Orange County,

19  California, where Plaintiff and the Chief Financial Officer and the books and

20  records are located.

21              Also on or about June 22, 2007, Legacy, Legacy GmbH, and

22  Highland Financial Corporation ("Highland Financial") (an affiliate of the

23  Highland Defendants) entered into a Credit Agreement with Defendant NexBank

24  (which is owned by the principals of Defendant Highland Capital).  Pursuant to

25  the Credit Agreement, Highland Financial obligated itself as lender to extend

26  certain credit facilities to the borrower, Legacy GmbH, in the aggregate amount

27  not to exceed $43 million, consisting of term loans aggregating $38 million and

28  / / /

1  up to $5 million of revolving commitments.  NexBank is the administrative agent

2  under the Credit Agreement.

3        The initial $32 million of net loan proceeds under the Credit

4  Agreement were deposited in an account maintained by Legacy in Orange

5  County, California and thereafter distributed to Legacy GmbH.  The initial

6  capital contributions to Legacy by Plaintiff in the amount of $1 million, and

7  Defendants Highland Crusader and Highland Credit Strategies in the amount of

8  $1 million, were also deposited in an account maintained by Legacy in Orange

9  County, California.

10        Moreover, the obligation to fund the revolving credit line in the

11  aggregate amount of $5 million has been acquired by Defendants Highland

12  Crusader and Highland Credit Strategies as lenders as to $2.5 million each.

13  Thus, Defendants Highland Crusader and Highland Credit Strategies are both

14  members of Legacy and lenders to Legacy GmbH, both of which maintain offices

15  in Orange County, California.

16      B.   Plaintiff's Claims

17        Plaintiff alleges that the Highland Defendants, aided and abetted by

18  NexBank, breached their fiduciary duties to Plaintiff by, among other acts,

19  instructing NexBank, as administrator of the credit facility, to repudiate the

20  obligations under the Credit Agreement to allow Legacy GmbH to draw down on

21  the $5 revolving credit line (which had become the obligation of Highland

22  Crusader and Highland Credit Strategies), as well as by instructing NexBank to

23  wrongfully demand the application of certain proceeds of a sale of real property

24  by Legacy GmbH to pay down the credit facility.

25      C.   Defendants' Failure to Timely Meet and Confer

26        Defendants admit they failed to timely meet and confer with counsel

27  for Plaintiff as required by Local Rule 7-3.  Nearly two weeks after Plaintiff

28  commenced this case on January 9, 2009, Defendants Highland Crusader and

1   Highland Credit Strategies filed a verified complaint against Plaintiff in the Court

2   of Chancery of the State of Delaware for, *inter alia*, breach of fiduciary duty,

3   breach of contract and the dissolution of Legacy (the "Delaware Action").  The

4   claims are based on allegations that Plaintiff took improper action under the

5   Credit Agreement, and is centered on the identical NexBank episode that forms

6   the basis of Plaintiff's claims in this Court.  These claims not only mirror the

7   allegations of Plaintiff's Complaint, but are clearly compulsory counterclaims in

8   this case.  Significantly, all of the wrongdoing alleged by Defendants Highland

9   Crusader and Highland Credit Strategies in the Delaware Action is alleged to

10   have occurred in Orange County, California, where Plaintiff operates Legacy as

11   its President and CEO.

12          Immediately upon commencing the Delaware Action, Defendants

13   Highland Crusader and Highland Credit Strategies attempted to obtain a "status

14   quo order" from the Delaware Chancery Court.  The hearing on the motion for

15   status quo order was held on January 23, 2009, after the Local Rule 7-3 pre-

16   motion meet and confer deadline in this case – January 22, 2009.[1/] At the hearing

17   on January 23, 2009, the Delaware Chancery Court rejected the terms of the

18   status quo order as requested by Defendants Highland Crusader and Highland

19   Credit Strategies.

20          Within hours of the conclusion of the Delaware hearing, and late in

21   the day on Friday, January 23, 2009, counsel for Defendants telephoned counsel

22   for Plaintiff for the first time and requested an extension of time to respond to the

23   Complaint.  In a conversation on January 26, 2009, Defendants' counsel

24

25          [1/]      Pursuant to Local Rule 7-3, any party contemplating filing a motion
     to dismiss pursuant to FRCP 12(b) is required to contact opposing counsel five
26   days prior to the deadline to file such motion to "discuss thoroughly" the
     substance of the contemplated motion and a possible resolution.  Calculation of
27   the five day deadline does not include weekend days pursuant to FRCP 6(a)(2).
     In this case Defendants' deadline to file a motion to compel was January 29,
28   2009.  As such, its deadline to conduct the Local Rule 7-3 pre-motion conference
     was January 22, 2009.

1 attempted to conduct a Local Rule 7-3 pre-motion conference contending that,

2 despite Defendants' commencement of the Delaware Action, the only proper

3 location for adjudication of the claims in this case is the Dallas Division of the

4 Northern District of Texas.

5    Plaintiff's counsel pointed out the obvious contradiction of

6 Defendants' argument and otherwise advised counsel that the pre-motion

7 conference was not timely and, as such, the filing of a motion to dismiss would

8 be improper.

9 3.  ARGUMENT

10   A.  The Motion Should Be Denied For Failure to Comply With Local

11     Rule 7-3

12     In their Notice of Motion Defendants concede that they failed to

13 conduct the requisite Local Rule 7-3 pre-motion conference with counsel within

14 the time prescribed by the rule.

15    Defendants' failure to timely comply with the rule was no accident.

16 Defendants clearly hoped to obviate the need for any appearance in this Court.

17 Defendants purposefully waited until after the Delaware Chancery Court's ruling

18 on the request for a status quo order to contact Plaintiff's counsel.  Defendants'

19 strategy to first "test the waters" in Delaware before committing to a position in

20 this case is transparent.  Having not received what they sought in Delaware,

21 Defendants now seek to direct this action to Texas, no doubt hoping to avoid not

22 only this Court's jurisdiction, but to exit Delaware by filing their compulsory

23 counterclaims in Texas.

24    Defendants' blatant attempts at forum shopping should not be

25 rewarded.

26 / / /

27 / / /

28 / / /

1   **B.   The Motion Should Be Denied Because Plaintiff Is Not Required To**
2        **Plead Facts Demonstrating Personal Jurisdiction or Venue**

3           Defendants attack only Plaintiff's pleading.  Defendants do not argue

4   the facts pertaining to the existence of personal jurisdiction, and do not submit

5   any evidence in support of the Motion.  Rather, Defendants base their motion on

6   the following mistaken legal argument: "[P]laintiff must ***plead*** allegations that

7   will support a Court's personal jurisdiction ***over each defendant***"(emphasis in

8   original)[2] and that "Plaintiff has not alleged any basis for this Court's exercise of

9   personal jurisdiction."[3]

10          Defendants are mistaken.  There is no requirement that Plaintiff

11  plead factual allegations demonstrating personal jurisdiction or venue.  Federal

12  Rule of Civil Procedure ("Rule") 8(a) provides that a complaint must contain "a

13  short and plain statement of the grounds for the court's jurisdiction, unless the

14  Court already has jurisdiction and the claim needs no new jurisdictional

15  support."[4] The reference to "the court's jurisdiction" in Rule 8(a) ***does not***

16  ***encompass personal jurisdiction***.  As stated in *Stirling Homex Corporation v.*

17  *Homasote Company*, 437 F. 2d 87, 88 (2nd Cir. 1971):

18          "Rule 8 of the Federal Rules of Civil Procedure prescribes the

19          rather simple requirements of a sufficient complaint. Besides a

20          straightforward statement of the claim and a demand for judgment,

21          the complaint need contain only 'a short and plain statement of the

22          grounds upon which the court's jurisdiction depends' . . . ***Any doubt***

23          ***that the term 'jurisdiction in this context refers to subject matter***

24          ***rather than personal jurisdiction can be resolved by reference to***

25

---

26  [2]   See, Motion at 3:19-20 and generally Section III. A.

27  [3]   See, Motion at 5:1-2 and generally Section III.B.

28  [4]   Rule 8 contains no venue pleading requirement.

1    ***Form 2 [now Form 7] of the Rules, which speaks only of subject***

2    ***matter jurisdiction.***" (Emphasis added)[5/]

3          The cases cited by Defendants for the proposition that a plaintiff

4    "must plead allegations that will support a court's personal jurisdiction over each

5    defendant" do not support this flawed legal premise.  It is well-established that

6    the language of a statute must be regarded as conclusive and cannot be expanded

7    without a clearly expressed legislative intent to do so.  *American Tobacco*

8    *Company v. Patterson*, 456 U.S. 63, 68 (1982).  As pointed out by the *Stirling*

9    *Homex* court, the plain language of Rule 8 taken in conjunction with Form 7 of

10   the Rules unequivocally establish that personal jurisdiction and venue need not be

11   alleged in a complaint.  Indeed, Rule 84 expressly provides that "[t]he Forms in

12   the Appendix suffice under these rules and illustrate the simplicity and brevity

13   that the rules contemplate."

14         The Motion – which is solely an attack on the sufficiency of the

15   pleadings – should be denied because Plaintiff is not required to plead the

16   allegations which Defendants' argue are missing from the Complaint.

17      C.   <u>Notwithstanding Defendants' Misunderstanding Of The Pleading</u>

18          <u>Requirements, Sufficient Facts Exist Establishing Personal</u>

19          <u>Jurisdiction</u>

20         In order to defeat a challenge to the personal jurisdiction of the court

21   by motion to dismiss, the plaintiff need only make a *prima facie* showing that

22   personal jurisdiction exists.  *Ballard v. Savage*, 65 F. 3d 1495, 1498 (9th Cir.

23   1995).  In addition, the complaint's uncontroverted factual allegations must be

24   accepted as true.  *Harris Rutsky & Co. Insurance Services v. Bell & Clements,*

25   *Ltd.*, 328 F. 3d 1122, 1129 (9th Cir. 2003).

26

27        [5/]    Form 7 of the Rules demonstrates how jurisdiction is to be plead

28   under Rule 8 and provides only for the pleading of diversity jurisdiction, federal
     question jurisdiction and maritime jurisdiction.

It is well-settled that even if a non-resident defendant's contacts within the forum state are not continuous and systematic for general personal jurisdiction (a point which Plaintiff does not concede as to Defendants), the defendant is still subject to personal jurisdiction on claims related to its activities and contacts in the forum state:

> "If the defendant's activities are not so pervasive to subject him to general jurisdiction, then a court may still assert jurisdiction for a cause of action which arises out of the defendant's forum-related activities. We have established a three-part test for determining whether such limited jurisdiction may be exercised:
>
> 1. The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
>
> 2. The claim must be one which arises out of or results from the defendant's forum-related activities.
>
> 3. Exercise of jurisdiction must be reasonable."

*Haisten v. Grass Valley Medical Reimbursement Fund*, 784 F. 2d 1392, 1397 (9th Cir. 1986).

In this case it cannot be reasonably disputed that, at the very least, limited specific jurisdiction exists as to the Defendants. The allegations of the Complaint, as well as the documents attached to the Complaint establish that the entire case stems from the agreement between Plaintiff and Defendants Highland Crusader and Highland Credit Strategies to form Legacy, which maintains its office in, and operates from, Orange County, California. (Complaint at ¶ 9 and

1 Exhibit "1"). In addition, Legacy's wholly owned operating company, Legacy

2 GmbH, maintains its only U.S. office in Orange County, California.

3        As set forth in the Declaration of Michael R. Danzi, the Defendants,

4 including NexBank, have sent numerous correspondence addressed to Legacy in

5 Orange County, California including demands for the corporate and accounting

6 records of Legacy, which are located in Orange County, California. In addition,

7 the monies loaned under the Credit Agreement were also initially deposited in the

8 bank account of Legacy located in Orange County, California. Furthermore, as

9 part of the formation of Legacy Defendants Highland Crusader and Highland

10 Credit Strategies deposited $1 million to capitalize Legacy in Legacy's bank

11 account in Orange County. Plaintiff was also required to pledge his interest in

12 Legacy to NexBank as additional security under the Credit Agreement. Any

13 attempt to levy on Plaintiff's pledge would have to occur in Orange County,

14 California.

15        There can be no question that Defendants availed themselves to the

16 jurisdiction of this Court. Indeed, in the Delaware Action, Defendants Highland

17 Crusader and Highland Credit Strategies allege that all wrongdoing underlying

18 their claims against Plaintiff in connection with the operation of Legacy occurred

19 in Orange County, California.

20        Exercise of jurisdiction over Defendants in this case is reasonable.

21 Defendants have purposefully injected themselves into this State knowing that

22 Plaintiff resides in Orange County, the operations of Legacy are in Orange

23 County, the bank accounts of Legacy are in Orange County and the books and

24 records of Legacy are maintained in Orange County.

25        In addition, Defendants have not and cannot demonstrate any

26 extraordinary burden in defending the claims in Orange County. Defendants

27 commenced the Delaware Action in Delaware which is at least as far from Texas

28 as is California and Defendants are represented by competent counsel in

1   California.  The State of California has at least as much of an interest in

2   adjudicating the matter as does the State of Texas.  Plaintiff is a resident of

3   California and the harm alleged in the Complaint occurred to him in California.

4   Finally, because the operations and books and records of Legacy are all located

5   in Orange County, the District Court sitting in Orange County, California is the

6   most convenient, efficient, and effective forum.

7              Although not required to do so given Defendants' lack of any

8   evidentiary support to their Motion, Plaintiff has nonetheless made a *prima facie*

9   showing that this Court can exercise personal jurisdiction over Defendants.

10       D.     Notwithstanding Defendants' Misunderstanding Of The Pleading

11              Requirements, Sufficient Facts Exist Establishing Venue

12              Similarly, there is no requirement that venue be plead in a

13   complaint.  In any event, there are two independent grounds for venue in the

14   Central District of California.  First, venue is proper under § 1391(a)(2) because

15   a substantial part of the events giving rise to Plaintiff's claims occurred in the

16   Central District of California.  Second, venue is proper under 28 U.S.C.

17   § 1391(a)(1) because, as set forth above, the Defendants are subject to personal

18   jurisdiction in this District and are therefore deemed to reside here under

19   § 1391(c).

20              Under 28 U.S.C. § 1391(a)(2), venue is proper in any judicial

21   district in which "a substantial part of the events or omissions giving rise to the

22   claim occurred. . . ."  Section 1391(a)(2) is satisfied where, as here, the harm

23   suffered from a defendant's actions occurred in the judicial district in question.

24   See *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001).  In

25   *Myers*, the court found that "a substantial part of the events giving rise to the

26   claim occurred in Nevada" because "at least one of the 'harms' suffered by

27   plaintiffs . . . was felt [there]."  *Id.*; see also, *Panavision Int'l, L.P. v. Toeppen*,

28   945 F.Supp. 1296, 1298-1300 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir.

1   1998) (finding venue in the district in which the plaintiff corporation had its

2   principal place of business because the harm from trademark infringement was

3   allegedly suffered there).  Because the harm suffered by Plaintiff as a result of

4   Defendants' wrongful conduct was felt in the Central District of California,

5   venue is proper here under § 1391(a)(2).

6          Section 1391(a)(1) provides a separate and independent basis for

7   venue in the Central District of California.  That subsection provides for venue in

8   a judicial district "where any defendant resides, if all defendants reside in the

9   same State. . . ."  In turn, § 1391(c) provides that "a defendant that is a

10  corporation shall be deemed to reside in any judicial district in which it is subject

11  to personal jurisdiction at the time the action is commenced."  Here, as

12  demonstrated above, Defendants are subject to personal jurisdiction in the Central

13  District of California; accordingly, venue is proper.

14  4.     CONCLUSION

15         Based on the foregoing, Plaintiff respectfully requests that the

16  Motion be denied in its entirety.  In the alternative, Plaintiff requests that he be

17  given leave to amend the Complaint to cure any deficiencies the Court may find.

18

19  DATED: February 13, 2009          Respectfully submitted,

20                                    RUS, MILIBAND & SMITH
                                      A Professional Corporation
21

22
                                      By:
23                                       RONALD RUS
                                         Attorneys for Plaintiff
24                                       MICHAEL R. DANZI

25

26

27

28

## DECLARATION OF RONALD RUS

I, RONALD RUS, declare as follows:

1.      I am an attorney at law duly licensed to practice before the above-entitled Court, and am a member of the law firm of Rus, Miliband & Smith, A Professional Corporation, attorneys of record for Plaintiff Michael R. Danzi ("Plaintiff").

2.      I have firsthand personal knowledge of the matters set forth herein, and if called upon to testify, would and could competently testify thereto.

3.      On January 21, 2009, and after Plaintiff commenced this action on January 9, 2009, Defendants Highland Crusader and Highland Credit Strategies filed a verified complaint against Plaintiff in the Court of Chancery of the State of Delaware for, *inter alia*, breach of fiduciary duty, breach of contract and the dissolution of Legacy (the "Delaware Action").  A true and correct copy of the Complaint in the Delaware Action, without exhibits, as transmitted via facsimile on January 21, 2009, is attached hereto as Exhibit "1."

4.      The Rule 7-3 pre-motion meet and confer deadline in this case was January 22, 2009.

5.      Immediately upon commencing the Delaware Action, Defendants Highland Crusader and Highland Credit Strategies attempted to obtain a "status quo order" from the Delaware Chancery Court.  The hearing on the motion for status quo order was held on January 23, 2009.  At the hearing on January 23, 2009, the Delaware Chancery Court rejected the status quo order as requested by Defendants Highland Crusader and Highland Credit Strategies.

6.      On January 26, 2009, I spoke for the first time with Clark S. Stone of McPherson Kwok Chen & Heid, counsel for Defendants herein, at which time he advised that Defendants intended to file a motion to dismiss.

/ / /

1  I advised Mr. Stone that he had not complied with Rule 7-3 and that I, therefore,

2  did not believe he could properly bring the Motion.

3        I declare under penalty of perjury under the laws of the State of

4  California and the United States of America, that the foregoing is true and

5  correct.

6      Executed this 13th day of February, 2009 at Irvine, California.

7

8  _____

9  RONALD RUS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO
DISMISS PLAINTIFF'S COMPLAINT

## DECLARATION OF JOEL S. MILIBAND

I, JOEL S. MILIBAND, declare as follows:

1.     I am an attorney at law duly licensed to practice before the above-entitled Court, and am a member of the law firm of Rus, Miliband & Smith, A Professional Corporation, attorneys of record for Plaintiff Michael R. Danzi ("Plaintiff").

2.     I have firsthand personal knowledge of the matters set forth herein, and if called upon to testify, would and could competently testify thereto.

3.     Defendants Highland Crusader and Highland Credit Strategies filed a verified complaint against Plaintiff in the Court of Chancery of the State of Delaware for, *inter alia*, breach of fiduciary duty, breach of contract and the dissolution of Legacy (the "Delaware Action").

4.     Late in the day on Friday, January 23, 2009, counsel for Defendants, Clark S. Stone of McPherson Kwok Chen & Heid, contacted the undersigned for the first time and requested an extension of time to respond to the Complaint.

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed this 13th day of February, 2009 at Irvine, California.


_____
JOEL S. MILIBAND

## DECLARATION OF MICHAEL R. DANZI

I, MICHAEL R. DANZI, declare as follows:

1.    I am the Plaintiff in the above-entitled action.

2.    I have firsthand personal knowledge of the matters set forth herein, and if called upon to testify, would and could competently testify thereto.

3.    On or about June 2, 2007, Defendants Highland Crusader and Highland Credit Strategies and I formed Legacy Pharmaceuticals International, LLC ("Legacy") in connection with the acquisition of two separate pharmaceutical plants from Orange County, California headquartered Valeant Pharmaceuticals International.  The acquisition was consummated through Legacy's wholly-owned operating company, Legacy Pharmaceuticals International GmbH ("Legacy GmbH"), and its wholly-owned subsidiary Solco Pharmaceuticals Switzerland GmbH.  I am an Orange County, California resident and hold an approximate 45% member interest in Legacy and am a manager of Legacy, as well as its President and Chief Executive Officer.  I am a member of the board of directors of Legacy GmbH, and also its President and Chief Executive Officer.

4.    Legacy has been and continues to be operated by me from offices in Orange County, California, where its books and records are located. The only U.S. office of Legacy GmbH is in Orange County, California, where myself, and the Chief Financial Officer and the books and records are located.

5.    On or about June 22, 2007, Legacy, Legacy GmbH, and Highland Financial Corporation ("Highland Financial") (an affiliate of the Highland Defendants) entered into a Credit Agreement with Defendant NexBank (which is owned by the principals of Defendant Highland Capital).  Pursuant to the Credit Agreement, Highland Financial obligated itself as lender to extend certain credit facilities to the borrower, Legacy GmbH, in the aggregate amount not to exceed $43 million, consisting of term loans aggregating $38 million and

1  up to $5 million of revolving commitments.  NexBank is the administrative agent
2  under the Credit Agreement.

3      6.      The initial $32 million of net loan proceeds under the Credit
4  Agreement were deposited in an account maintained by Legacy in Orange
5  County, California and thereafter distributed to Legacy GmbH.  The initial
6  capital contributions to Legacy by me in the amount of $1 million, and
7  Defendants Highland Crusader and Highland Credit Strategies in the amount of
8  $1 million, were also deposited in an account maintained by Legacy in Orange
9  County, California.

10      7.      Moreover, the obligation to fund the revolving credit line in
11  the aggregate amount of $5 million has been acquired by Defendants Highland
12  Crusader and Highland Credit Strategies as lenders as to $2.5 million each.
13  Thus, Defendants Highland Crusader and Highland Credit Strategies are both
14  members of Legacy and lenders to Legacy GmbH, both of which maintain offices
15  in Orange County, California.

16      8.      The Defendants, including NexBank, have sent numerous
17  correspondence addressed to Legacy in Orange County, California, including
18  demands for the corporate and accounting records of Legacy, which are located
19  in Orange County, California.  In addition, the monies loaned under the Credit
20  Agreement were also deposited in the bank account of Legacy located in Orange
21  County, California.  Furthermore, as part of the formation of Legacy
22  Defendants, Highland Crusader and Highland Credit Strategies deposited $1
23  million to capitalize Legacy in Legacy's bank account in Orange County.  I was
24  also required to pledge my interest in Legacy to NexBank as additional security
25  under the Credit Agreement.  Any attempt to levy on my pledge would have to
26  occur in Orange County, California.

27  / / /
28  / / /

1        9.    A true and correct copy of correspondence dated January 26,

2  2009, from Patrick H. Daugherty of Highland Capital to Legacy Pharmaceuticals

3  International, LLC in Costa Mesa, California, is attached hereto as Exhibit "2."

4        10.   A true and correct copy of correspondence dated January 30,

5  2009, from Patrick H. Daughter to Legacy Pharmaceuticals International, LLC in

6  Costa Mesa, California, is attached hereto as Exhibit "3."

7       I declare under penalty of perjury under the laws of the State of

8  California and the United States of America, that the foregoing is true and

9  correct.

10      Executed this **13** day of February, 2009 at Irvine, California.

11

12

13        MICHAEL R. DANZI

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "1"

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

HIGHLAND CRUSADER OFFSHORE
PARTNERS, L.P., HIGHLAND CREDIT
STRATEGIES MASTER FUND, L.P. AND
PATRICK H. DAUGHERTY, *on behalf of
themselves and derivatively on behalf of
Legacy Pharmaceuticals International, LLC*

        Plaintiffs,

v.

MICHAEL R. DANZI,

        Defendant

and LEGACY PHARMACEUTICALS
INTERNATIONAL, LLC,

        Nominal Defendant.

C.A. No.:

## VERIFIED COMPLAINT

1.  Plaintiffs Highland Crusader Offshore Partners, L.P. and Highland Credit Strategies Master Fund, L.P. (collectively, "Highland") and Patrick H. Daugherty ("Daugherty") file this Verified Complaint to enjoin Michael R. Danzi's ("Danzi") continuing breaches of fiduciary duty and his unlawful attempts to seize control of Legacy Pharmaceuticals International, LLC ("Legacy" or the "Company") and its assets for his own use and benefit.

2.  Legacy is a Delaware limited liability company in which Highland holds approximately a 45% interest and Danzi owns approximately a 45% interest. Under Legacy's Limited Liability Company Operating Agreement (the "LLC Agreement"),[1] all powers to control and manage the business and affairs of Legacy are vested in a "Management Committee," which is comprised of one member designated by Highland and one member designated by Danzi.

---

[1]    A true and correct copy of the LLC Agreement is attached hereto as Exhibit A.

Danzi designated himself as a Manager. Highland's designee to the Management Committee is Daugherty. Each of the members of the Management Committee has an equal vote, and virtually all powers vested in the Management Committee require a majority vote of the Managers. Because Legacy only has two Managers, the LLC Agreement effectively requires a unanimous vote for the Management Committee to take action.

3.    Contrary to the terms of the LLC Agreement and in violation of his fiduciary duties to Legacy and its members, Danzi has attempted to usurp all powers over Legacy's business and affairs of Legacy by, among other things: (1) unilaterally taking significant actions affecting Legacy's finances and operations without obtaining the required approval of Legacy's Management Committee; (2) concealing from Daugherty financial and other operating information necessary for Daugherty to fulfill his fiduciary responsibilities to Legacy; (3) directing Legacy's chief financial officer to withhold information concerning Legacy's finances and operations from Daugherty; (4) misusing Legacy's financial assets for his own personal benefit; and (5) otherwise grossly mismanaging Legacy's business such that it is apparently in default, or on the brink of default, on Legacy's lending commitments.

4.    If Defendant Danzi is not stopped from usurping all power of Legacy's Management Committee for himself and from his repeated breaches of contractual and fiduciary duties, Legacy and its members will be irreparably harmed. Accordingly, Plaintiffs seek an injunction: (1) prohibiting Danzi from taking any further actions to interfere with Daugherty's efforts to fulfill his fiduciary and contractual duties to Legacy, (2) compelling Danzi to allow Daugherty and Highland immediate access to all books and records of Legacy, (3) prohibiting any further unilateral actions by Danzi on matters requiring approval of the Management

Page 2

Committee, and (4) prohibiting any further self-dealing or other improper use of Legacy funds for Danzi's own use and benefit.

## THE PARTIES

5.      Plaintiff Highland Crusader Offshore Partners, L.P. ("Highland Crusader") is a Bermuda limited partnership with its principal place of business in Dallas, Texas. Highland Crusader, with 500,000 units owned, maintains approximately a 22.3 percent interest in Legacy.

6.      Plaintiff Highland Credit Strategies Master Fund, L.P. ("Highland Strategies") is a Bermuda limited partnership, with its principal place of business in Dallas, Texas. Highland Strategies, with 500,000 units owned, maintains approximately a 22.3 percent interest in Legacy.

7.      Plaintiff Patrick H. Daugherty is an individual residing in Dallas, Texas. Daugherty is a duly appointed Manager on Legacy's two-member Management Committee.

8.      Defendant Michael R. Danzi is an individual who, on information and belief, resides in Orange County, California. Danzi is a Manager of Legacy, and also serves as its Chief Executive Officer. Danzi, with 1,000,000 units owned, maintains approximately a 45 percent interest in Legacy.

## FACTS

*Legacy and its Management Structure*

9.      Legacy Pharmaceuticals International, LLC was formed on June 22, 2007 by and through the LLC Agreement. Legacy was created in connection with the purchase, from Valeant Pharmaceuticals International, of two separate pharmaceutical plants. Legacy's business primarily includes contract manufacturing of large and small volume products and the ownership and licensing of certain niche drugs. Legacy's products include prescription, over-the-counter, generic, and cosmetic products, which it distributes to over 70 markets worldwide.

01/21/2009 WED 12:54   [TX/RX NO 8192]   ⓐ005

10.    From its inception and at all times relevant to this lawsuit, Legacy has been owned predominantly by three Members: Highland Crusader, Highland Strategies, and Danzi. Highland Crusader and Highland Strategies together made capital contributions totaling $1,000,000 in exchange for an aggregate total of 1,000,000 units. Danzi likewise contributed $1,000,000 for 1,000,000 units of Legacy. Highland and Danzi each have approximately a 45% interest in the Company. The Agreement specifies that profits and losses would be allocated among the Members in proportion to their percentage interests.

11.    Under the LLC Agreement, management of Legacy is vested in a Management Committee, which is to include not less than two Managers and not more than three Managers. Section 5.1 of the LLC Agreement provides that so long as Highland and/or its affiliates own more than 15% of the outstanding units of Legacy, Highland has the right to designate one individual to the Management Committee. Similarly, Section 5.1 provides that so long as Danzi owns more than 15% of the outstanding units of Legacy, Danzi has the right to designate one individual to the Management Committee. At the inception of the LLC Agreement, Danzi designated himself to be a Manager, and he remains a Manager of Legacy today. Highland's initial designee to the Management Committee was Mr. Brett Pope. In May or June of 2008, however, Mr. Pope withdrew as a Manager and Highland designated Daugherty to take his place.

12.    Section 5.1(e) of the LLC Agreement provides Danzi with authority to appoint an independent third Manager to serve on the Management Committee, provided that the appointee is reasonably acceptable to the Highland Manager. Danzi never chose to exercise this right, so Legacy's Management Committee has at all relevant times consisted of only two Managers.

13.    Under the LLC Agreement, each of the members of the Management Committee has an equal vote. Further, the LLC Agreement demands that, except as otherwise provided in

the LLC Agreement, the Management Committee can only take action by the affirmative vote of a majority of the total number of Managers on the Management Committee. Because Danzi chose not to exercise his right to appoint a third Independent Manager, all actions of the Management Committee require the unanimous vote of its two Managers.

14.    Section 5.3 of the Agreement describes the Management Committee powers:

> Except as otherwise provided in this Agreement, all powers to control and manage the business and affairs of the Company shall be *exclusively vested in the Management Committee* and the Management Committee may exercise all powers of the Company and do all such lawful acts as are not by statute, the Certificate, or this Agreement directed or required to be exercised or done by the Members and in doing so shall have the right and authority to take all actions that the Management Committee deems necessary, useful, or appropriate for the management and conduct of the Business. (emphasis added).

15.    Section 5.3 expressly enumerates specific rights and powers that are exclusively vested with the Management Committee, including, among other things: conducting business and carrying on the Company's operations; acquiring real or personal property; operating, maintaining, selling, conveying, or assigning real estate; executing any and all contracts, agreements, or instruments necessary or convenient in connection with the management and operation of the business; borrowing money and issuing evidences of indebtedness; executing any deed, lease, mortgage, deed of trust, or promissory note; prepaying, refinancing, recasting, increasing, modifying, or extending any liabilities affecting Legacy's assets; distributing funds to Members by way of cash income, return of capital or otherwise; contracting on behalf of Legacy for the employment and services of employees; and engaging in and performing and carrying out contracts of any kind.

16.     In exercising any of his powers, each Manager of the Management Committee is required to perform his duties in good faith, in a manner he reasonably believes to be in Legacy's best interest. Section 5.4(c) of the Agreement expressly provides that:

> The Management Committee shall be under a fiduciary duty to conduct the affairs of the Company in the best interests of the Company and of the Members, including the safekeeping and use of all of the Property and the use thereof for the exclusive benefit of the Company.

17.     The day to day business and affairs of Legacy are the responsibility of senior management, who are appointed by the Management Committee.  At Legacy's inception, the Management Committee appointed Danzi as its Chief Executive Officer, where he remains today. Danzi, like all other senior officers of Legacy, has been at all times accountable to the Management Committee and is forbidden from usurping powers vested in the Management Committee or acting in contravention of the Management Committee's directives or the terms of the LLC Agreement.

18.     Section 6.5 of the LLC Agreement provides Members and their representatives with specific rights to receive information from the Company.  The Agreement requires Legacy to furnish to its three Members end of fiscal year financial statements, end of fiscal quarter financial statements, and end of month financial statements, as well as such other information and data as a Member may from time to time reasonably request.  Any Member has the right to have reasonable access to and inspect and copy the contents of designated books and records and shall also have reasonable access during normal business hours to such additional financial information, documents, and books and records.  Furthermore, the Agreement requires Legacy to permit any Member to discuss its affairs, finances, and accounts with the Company's officers at reasonable times and as often as any such person may reasonably request.

01/21/2009 WED 12:54   [TX/RX NO 8192]  ☒008

*Legacy's Credit Agreement*

19.    On June 22, 2007, with approval of the Management Committee, Legacy entered into a Credit Agreement with certain Lenders; Highland Financial Corp., as lead arranger of the lenders; and NexBank, SSB, as administrative agent. Under the Credit Agreement, the lenders agreed to extend credit to Legacy not to exceed $43,000,000, consisting of $38,000,000 aggregate principal amount of Term Loans and $5,000,000 aggregate principal amount of Revolving Commitments. Although the Credit Agreement made available a $5,000,000 revolving credit line, at no time did Legacy's Management Committee approve any drawdown of this credit line.

20.    The Credit Agreement included loan covenants requiring Legacy to maintain certain leverage and interest coverage ratios. The Credit Agreement allows the Lenders to accelerate Legacy's loan obligations in the event that Legacy fails to maintain these ratios.

*Legacy's Sale of Building 11 and Danzi's Subsequent Dispute with the Lenders*

21.    In June 2008, Legacy sold one of its buildings in Basel, Switzerland, Building 11, for $2,321,683.85. Section 6.9(h) of the Credit Agreement authorized Legacy to sell Building 11 provided that, among other things, the net proceeds from the sale would be applied to repay the loans in accordance with Section 2.14. Sections 2.13 and 2.14 of the Credit Agreement required these funds to be used for prepayment of Legacy's existing debt, except under certain specified circumstances. Specifically, Section 2.13(a) of the Credit Agreement provided:

> so long as no Default or Event of Default shall have occurred and be continuing, upon delivery of a written notice to Administrative Agent, Company shall have the option . . . . to invest the Net Asset Sale Proceeds (the "Asset Sale Reinvestment Amounts") in (i) long-term productive assets of the general type used in the business of Company if such assets are purchased or constructed within 180 days following receipt of the Net Asset Sale Proceeds . . . , or (ii) Permitted Acquisitions if (x) a definitive purchase agreement with

respect to such Permitted Acquisitions is executed within 120 days following receipt of such Net Assets Proceeds and (y) the transaction contemplated by such purchase agreement is consummated within 180 days of receipt thereof; . . . .

22.    On June 30, 2008, Jeff Cole ("Cole"), Legacy's chief financial officer, sent a letter to Marcia Sands at NexBank advising her that Legacy was retaining the proceeds of the Building 11 sale in accordance with Section 2.13(a) of the Credit Agreement and that Legacy was currently in negotiations for the purchase of assets that would qualify as a permitted reinvestment.

23.    On September 9, 2008, Legacy entered into an agreement to acquire the U.S. product rights to four generic products from Par Pharmaceuticals for $700,000.

24.    On September 11, 2008, Cole sent a letter to NexBank stating that Legacy had "executed an agreement for the purchase of long-term productive assets from Par Pharmaceuticals," and that "[t]he total investment in Par assets is $2.6 million, as approved by Highland and the Managing Committee of Legacy Pharmaceuticals International LLC."

25.    In October 2008, the Lenders, through NexBank, requested that the entire net proceeds of $2,321,683.85 from the Building 11 sale be applied as a prepayment under Sections 6.9(h) and 2.14 of the Credit Agreement. In response to this request, Cole notified NexBank that the Par Pharmaceuticals transaction was fully completed and that it was too late now for Legacy to consider or accommodate any objections.

26.    On November 21, 2008, NexBank sent a letter to Legacy stating that the Lenders agreed that the $700,000 in Building 11 proceeds paid to Par Pharmaceuticals did qualify as a long-term productive asset under Section 2.13(a)(i) of the Credit Agreement and that such asset was purchased in the allowed 180 day time frame. But the Lenders did not agree that the

01/21/2009 WED 12:54   [TX/RX NO 8192]   ☑010

remaining $1,621,683.85—to be used, according to Danzi, to cover transaction, post-acquisition regulatory, technical development/transfer costs and working capital requirements—in Building 11 proceeds qualified as long-term productive assets.

27.    On December 15, 2008, Cole apparently requested a 30 day extension to respond to NexBank's November 21, 2008 letter.  On information and belief, NexBank thereafter replied that it would agree to the extension request if Legacy would acknowledge that it was in default of its obligation to forward the requested $1,621,683.85 of remaining proceeds from the sale of Building 11.  Danzi did not notify Daugherty that the Lenders made this demand and, as a result, no Management Committee discussion took place relative to Legacy's options in light of this issue.

28.    As a result of this dispute between Legacy and its lenders, Daugherty recommended to Danzi that the Management Committee retain independent counsel with a national reputation to help interpret the Credit Agreement and to determine if the full amount of the Building 11 proceeds qualified for reinvestment as a long-term productive asset.  Danzi initially indicated a preference for the law firm of Bingham & McCutcheon, and Daugherty deferred to that choice.  But despite the agreement to consult with independent counsel, Danzi never followed through with his commitment.

*Danzi's Unilateral and Unauthorized Attempt to Borrow $5,000,000 Under Revolving Credit Line*

29.    On October 19, 2008, without prior discussion with Daugherty and without Management Committee approval, Danzi sent a letter addressed to "Highland Capital Management, LP" in which he offered to purchase all of the outstanding debt owed under the Credit Agreement with Highland Financial Corp., and all of the outstanding equity in Legacy held by Highland Crusader and Highland Strategies.  Danzi proposed to purchase Legacy's $38

million in outstanding term debt for $9.5 million, and to purchase the 1,000,000 Legacy units owned by Highland Crusader and Highland Strategies for $250,000. Danzi's offer also included a veiled threat to draw on the $5,000,000 Revolver if the terms were not accepted. Specifically, he stated that he would refrain from making any draw on the Revolver if his terms were accepted.

30.   In the course of attempting to justify his low offer, Danzi reported in his October 19 letter that Legacy's "capital structure does not support our plans," and that Legacy was "in need of covenant relief due to our performance."

31.   On October 20, Danzi sent Legacy's October forecast to a member of Daugherty's staff. In the forecast, Danzi projected that Legacy's year-end 2008 EBITDA would be $3.55 million, which indicated that Legacy would be in violation of one of its covenants under the Credit Agreement.

32.   The next day, without notifying Daugherty or obtaining Management Committee approval, Danzi sent a Funding Notice to NexBank requesting to draw down the entire $5,000,000 from the Revolver. In the Funding Notice, Danzi warranted that Legacy "reasonably expects, after giving effect to the borrowing contemplated hereby and based upon good faith determinations and projections consistent with the Financial Plan, to be in compliance with all operating and financial covenants set forth in the Credit Agreement as of the last day of the current Fiscal Quarter."

33.   Danzi's October 19, 2008 offer was rejected and, on October 23, 2008, Danzi, again without prior discussion with or approval by the Management Committee, sent a second letter to "Highland Capital Management LP" offering to buy all of the outstanding equity in Legacy held by Highland Crusader and Highland Strategies. Danzi's second offer proposed to

01/21/2008 WED 12:54   [TX/RX NO 8192]   ☒012

purchase Legacy's $38 million in outstanding term debt for $19 million, and to purchase the 1,000,000 Legacy units owned by Highland Crusader and Highland Strategies for $2,000,000. Danzi used his unauthorized request to drawdown the entire $5,000,000 under the Revolver as a threat to force acceptance of his terms. Specifically, Danzi stated that if his proposal was accepted he would not make any draw on the $5,000,000 Revolver, and that if his prior request had already been funded, he would repay the money at closing.

34.   On the same day, October 23, 2008, Daugherty independently learned of Danzi's request to draw down $5,000,000 under the Revolver. Daugherty immediately notified Danzi in writing that such unilateral actions without Management Committee approval were expressly prohibited by the LLC Agreement. Daugherty also informed Danzi that if Danzi's offer to purchase the bank debt was made on his own personal behalf, Danzi's fiduciary duties with regard to self-dealing would preclude him from voting on the matter. Given the concerns raised by Danzi's unilateral and extraordinary activity, Daugherty made a formal, written request for a detailed analysis of Legacy's cash flow and liquidity needs that led Danzi to determine that Legacy needed to borrow $5,000,000. Daugherty stressed the importance of obtaining this information so that the Management Committee could evaluate Legacy's operating viability and solvency.

35.   Also on October 23, 2008, Daugherty sent notice to NexBank that Danzi's attempt to fully draw down the Revolver had not been approved by the Management Committee. Daugherty requested that NexBank cease and desist from releasing the funds until Danzi received proper Management Committee approval.

36.   By letter dated October 24, 2008, NexBank informed Legacy that it was not prepared to make any Credit Extension at that point because the Funding Notice may have been

01/21/2009 WED 12:54  [TX/RX NO 8192]  Ø013

sent without proper authorization. NexBank requested that Legacy provide satisfactory evidence that Danzi's request was, in fact, authorized. NexBank agreed to proceed with the funding request if it received this confirmation.

37.     Danzi ultimately abandoned his attempt to access the Revolver and withdrew his offer to purchase Legacy's outstanding debt and equity, but resisted Daugherty's requests for information. Although Danzi sent Daugherty draft forecasts for 2008 and 2009 and a copy of the report of Legacy's auditor for its 2007 financial statements, Danzi did not provide the detailed analysis of cash flow and liquidity that led Danzi to seek to borrow $5,000,000 and did not respond to Daugherty's request for an independent examiner to evaluate Legacy's current financial situation. Accordingly, on October 24, 2008, Daugherty reiterated his request for a detailed analysis as to why Legacy required $5,000,000 and, additionally, requested from Danzi any other information that would be relevant to Legacy's current financial status and prospects.

38.     On October 24, 2008 Danzi committed to preparing for Daugherty a report on Legacy's "status". Danzi never provided the report to Daugherty nor agreed to the independent examination of Legacy's current financial position.

### Danzi's Recent Efforts to Hide Financial Information from Daugherty and Highland

39.     On December 15, 2008, Danzi traveled to Dallas to present the Management Committee with Legacy's 2008 business update and 2009 Financial Plan. Although Danzi had projected year-end EBITDA of $3.55 million just two months earlier, and reported actual EBITDA through November 2008 of $1.56 million, Danzi now forecasted that the 2008 year-end EBITDA would be approximately $5.12 million. This forecast appeared designed to show compliance with Legacy's debt covenants. Yet, to meet this forecast, Danzi would need to deliver an EBITDA in December of over 200 percent more than the first 11 months of the year

01/21/2009 WED 12:54   [TX/RX NO 8192]   ☑014

combined. In conversations about expected performance, Danzi made no mention of any extraordinary upcoming circumstances that would lead a reasonable person to believe this forecast was possible. In fact, the possibility of reaching this forecast is made more improbable by the fact that Legacy's EBITDA through November 2008 include an extraordinary, non-recurring $3,000,000 settlement payment from a major customer, which was effectively 100% EBITDA margin.

40. Despite a downward trend in Legacy's financial performance over the second half of 2008, Danzi represented Legacy's 2009 financial picture as even rosier, projecting an increase in EBITDA for 2009 to approximately $6,824,000. In response to inquiries regarding the inconsistency between the forecast and reality, Danzi replied vaguely that Legacy was "going to retool its business." Because Danzi predicated Legacy's 2009 forecast on the inconceivable assumption that Legacy would meet its 2008 forecast, Daugherty increased scrutiny of the information provided by Danzi. Danzi has thus far failed to deliver on his projections for 2008, and, in January 2009, informed Daugherty that the value of the equity in Legacy was zero.

41. Daugherty declined to approve the 2009 Plan and requested a revised plan.

42. In January 2009, Daugherty's staff approached Jeff Cole, Legacy's CFO, in an attempt to better understand the basis for Danzi's unrealistic projections. Cole revealed to members of Daugherty's staff that the 2009 projections were predicated on a number of apparently dubious assumptions, including a purported agreement from a Chinese vendor to pay a higher price for one of Legacy's major products. Daugherty thereafter requested additional financial information from both Danzi and Cole relative to Danzi's 2009 projections for Legacy.

43. Danzi's response to Daugherty's request for additional information was to unilaterally cease communications with Daugherty about Legacy's financial performance and

prospects. Danzi advised Daugherty that all further communications regarding the 2009

Financial Plan, access to the $5,000,000 Revolver, and the proceeds from the sale of Building 11

would need to be conducted through Danzi's personal attorney. Danzi further suggested that

Cole should not comply with Daugherty's requests for information.

### Danzi's Misuse of LLC funds for Personal Use

44.    Despite Legacy's precarious liquidity position and its declining financial

performance, Danzi misused Legacy funds for his personal use and benefit.  Specifically, during

travel purportedly on Legacy business, Danzi abused his expense account by, among other

things, purchasing first-class airfare, staying at luxury hotels, spending thousands of dollars on a

single dinner, and charging personal items such as spa treatments to Legacy.  Over the course of

the past year, these exorbitant expenditures have totaled over $190,000.  Not surprisingly, Danzi

never sought Management Committee approval for these out-of-the-ordinary expenses.

### COUNT 1 — BREACH OF FIDUCIARY DUTY

45.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth

herein.

46.    A relationship of trust and confidence existed between Danzi and Plaintiffs as a

result of the LLC Agreement, which states that the Management Committee is under a fiduciary

duty to conduct the affairs of Legacy in the best interests of Legacy and its members, including

the safekeeping and use of all of Legacy's property.  Thus, Danzi owed Plaintiffs fiduciary duties

of care, undivided loyalty, utmost good faith and fair dealing, accountability and disclosure.

47.    As a result of the conduct alleged herein, Danzi breached his fiduciary duties to

Plaintiffs by, among other things, (1) unilaterally taking significant actions affecting Legacy's

finances and operations without obtaining the required approval of Legacy's Management

Page 14

Committee;  (2) concealing from Daugherty financial and other operating information necessary for Daugherty to fulfill his fiduciary responsibilities to Legacy; (3) directing Legacy's chief financial officer to withhold information concerning Legacy's finances and operations from Daugherty; (4) misusing Legacy's financial assets for his own personal benefit; and (5) otherwise grossly mismanaging Legacy's business such that it is apparently in default, or on the brink of default, on Legacy's lending commitments.

48.     As a proximate result of Danzi's unlawful conduct, Plaintiffs have been and will continue to be irreparably harmed.

49.     Because of Danzi's egregious and numerous breaches of fiduciary duties, which have disenfranchised Plaintiffs from their bargained-for representation in the management and oversight of the Company, Plaintiffs request that this Court enjoin Danzi from any further breaches of fiduciary duty, including any efforts to restrict Plaintiffs from participation in the management of Legacy's affairs or efforts to block Plaintiffs' complete access to Legacy's books and records.  In the alternative, Plaintiffs request that this Court exercise its equitable powers to remove Danzi from his positions as a member of the Management Committee and as Chief Executive Officer.

## COUNT 2 — DISSOLUTION PURSUANT TO 6 DEL. C. § 18-802

50.     Plaintiffs seek the dissolution of Legacy Pharmaceuticals International, LLC because it is not reasonably practicable to carry on the business in conformity with the LLC Agreement.

51.     The LLC Agreement vests management of the Company in the Management Committee.  The Management Committee consists of only two Members, Daugherty and Danzi,

01/21/2009 WED 12:54  [TX/RX NO 8192] ⓐ017

each with an equal vote in Legacy's management and operation. The Management Committee may only act by the affirmative vote of a majority of the total number of its Managers.

52.    As a result of Danzi's usurpation of Legacy, refusal to provide or share critical information, and refusal to allow Daugherty to participate in the management of Legacy, the Members are in deadlock and are unable to obtain the required approval for any properly proposed action that requires approval of the Management Committee.

53.    Accordingly, Plaintiffs request a decree dissolving Legacy Pharmaceuticals International, LLC.

## COUNT 3 — BREACH OF CONTRACT / SPECIFIC PERFORMANCE

54.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

55.    The LLC Agreement is a valid, enforceable, and binding contract.

56.    Plaintiffs have performed their obligations under the LLC Agreement and are willing to continue participating in the ongoing operation of the Company so long as Danzi fulfills his contractual obligations under the LLC Agreement.

57.    The LLC Agreement unambiguously states that each Manager shall have one vote, and the Management Committee shall act by the affirmative vote of a majority of the total number of Managers on the Management Committee, which at all relevant times consisted of two Managers. Furthermore, the Agreement unambiguously requires a majority vote of the Management Committee to borrow money and invest Legacy assets in bank debt. Lastly, the LLC Agreement requires that Legacy permit any Member to inspect any of the properties of the company, including its books of account and other records, and to discuss its affairs, finances, and accounts with Legacy's officers as often as any such person may reasonably request.

58.   Danzi materially breached the LLC Agreement by:

- unilaterally requesting a $5,000,000 drawdown on Legacy's revolving credit facility without a majority vote of the Management Committee;

- unilaterally offered to invest Legacy funds in bank debt without a majority vote of the Management Committee;

- concealing from Daugherty information relevant to Danzi's inflated and exaggerated financial projections and necessary for Daugherty to fulfill his fiduciary responsibilities to Legacy;

- misusing Legacy's financial assets for his own personal benefit; and

- grossly mismanaging Legacy's business such that it is apparently in default, or on the brink of default, on Legacy's lending commitments.

59.   Plaintiffs are entitled to a declaration that Danzi breached the Agreement, that Danzi is required to allow Daugherty full participation in the management of the business of Legacy and access to any and all of its relevant financial and operating information, that Danzi is prohibited from any further unilateral actions on matters requiring the approval of the Management Committee, and that Danzi is prohibited from any further self-dealing or other improper use of Legacy funds for Danzi's own use and benefit.

60.   Section 13.13 of the LLC Agreement provides:

**Specific Performance.** Each Member agrees with the other Members that the other Members would be irreparably harmed if any of the provisions of this Agreement are not performed in accordance with their specific terms and that monetary damages would not provide an adequate remedy in such event. Accordingly, it is agreed that, in addition to any other remedy to which the nonbreaching Members may be entitled, at law or in equity, the nonbreaching Members shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof.

Accordingly, Plaintiffs are also entitled to an order requiring specific performance by Danzi of his contractual obligations under the LLC Agreement, including without limitation, that he provide Plaintiffs access to any and all relevant financial and operating information, including access to Legacy's officers; refrain from taking any action requiring Management Committee approval without obtaining a majority vote of the Management Committee; and comply with his contractual and fiduciary duties to act at all times in the best interest of Legacy and its members, which includes requests for Company expense reimbursement.

61.    No adequate remedy at law exists for Danzi's failure to perform his obligations under the Agreement. Plaintiffs will suffer irreparable harm if Danzi is not enjoined as requested herein.

### COUNT 4 — VIOLATION OF 6 DEL. C. § 18-305

62.    Plaintiffs are members of Legacy Pharmaceuticals International, LLC, a limited liability company formed under the laws of Delaware.

63.    Plaintiffs have the right to examine any and all true and full information regarding the business and financial condition of Legacy.

64.    Plaintiff Daugherty made requests in writing, via electronic mail, demanding information supporting the 2009 Financial Plan and the reasons for Danzi's request to draw down the full $5,000,000 Revolver established under the Credit Agreement. Additionally, Daugherty requested a detailed analysis of Legacy's cash flow and liquidity needs that led Danzi to make the notice of intent to borrow. Such requests went to an understanding of the true nature of Legacy's current financial situation.

65.    Danzi has refused to provide Plaintiffs with the requested books and records and has directed Legacy's chief financial officer not to provide Daugherty with information.

66.     Accordingly, Plaintiffs request that Danzi be ordered to provide access to all of Legacy's books and records to Highland and Daugherty immediately.

## DERIVATIVE DEMAND AND WAITING PERIOD EXCUSED

67.     Count 1 for breach of fiduciary duty is brought in the right and for the benefit of Legacy Pharmaceuticals International, LLC.

68.     Plaintiffs Highland Crusader and Highland Strategies are owners of Legacy and were owners at all times relevant to this matter.  Daugherty was at all relevant times a member of Legacy's Management Committee.

69.     Plaintiffs will adequately and fairly represent the interests of Legacy and its members in enforcing and prosecuting their rights.

70.     Plaintiffs have not made any demand on the Legacy Management Committee prior to instituting this action against the Defendants.  Such demand would be futile because a majority of disinterested Managers does not exist in this case.  Danzi has seized sole control of Legacy's Management Committee, and based on the allegations outlined above, he has a conflict of interest in considering any demand.

## PRAYER

Plaintiffs seek the following relief:

(1) The initial entry of a Status Quo Order.

(2) The entry of a Decree of initial dissolution of Legacy, and if deemed appropriate, the appointment of a trustee to administer the orderly winding up of Legacy's business.

(3) In the alternative, the entry of a preliminary and permanent injunction (a) prohibiting Danzi from taking any further actions to interfere with Daugherty's efforts to fulfill his fiduciary and contractual duties to Legacy, (b) compelling Danzi to allow

01/21/2009 WED 12:54  [TX/RX NO 8192]  @021

Daugherty and Highland immediate access to all books and records of Legacy, (c) prohibiting any further unilateral actions by Danzi on matters requiring approval of the Management Committee, and (d) prohibiting any further self-dealing or other improper use of Legacy funds for Danzi's own use and benefit.  In the further alternative, the entry of an Order removing Danzi from his positions as a member of the Management Committee and as Chief Executive Officer of the Company based on his multiple and egregious breaches of fiduciary duties.

(4)  Attorney's fees, costs, and expenses incurred by Plaintiffs in connection with this action.

(5)  Such other or further relief that the Court deems just and equitable.

WHEREFORE, Plaintiffs pray that upon final hearing the Court award judgment in favor of Plaintiffs and against Defendant and grant the aforementioned relief and such other and further relief as may be just.

Dated: January 21, 2009

PINCKNEY, HARRIS & WEIDINGER, LLC

   /s/ Michael A. Weidinger
Michael A. Weidinger (#3330)
Joanne P. Pinckney (#3344)
1220 Market Street, Suite 950
Wilmington, DE 19801
Telephone: (302) 504-1497
mweidinger@phw-law.com

*Attorneys for Plaintiffs*

Of Counsel:

HAYNES AND BOONE, LLP
R. Thaddeus Behrens
Scott Ewing
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

01/21/2009 WED 12:54  [TX/RX NO 8192]  ☑022

**EXHIBITS OMITTED**

## VERIFICATION OF ALL PLAINTIFFS

I, Patrick H. Daugherty, on behalf of myself, and also as a duly appointed member of the Management Committee of Legacy Pharmaceuticals International, LLC and an authorized agent for both Highland Crusader Offshore Partners, L.P. and Highland Credit Strategies Master Fund, L.P., do hereby depose and say, that I have read the foregoing VERIFIED COMPLAINT, and the factual assertions therein are true and correct to the best of my knowledge, information, and belief.

_____
Patrick H. Daugherty

Sworn to and Subscribed under penalty of perjury on this 21 day of January, 2009.



_____
Notary Public

MELINDA SLOANE
Notary Public, State of Texas
My Commission Expires
October 19, 2011

01/21/2009 WED 12:54   [TX/RX NO 8192]   Ø129

EXHIBIT "2"



# HIGHLAND CAPITAL
Management, L.P.

January 26, 2009

**Via FedEx**

Legacy Pharmaceuticals International, LLC
959 South Coast Drive, Suite 325
Costa Mesa, CA 92626
Attn: Mike R. Danzi, President/CEO

Re:     Formal Request for Information related to Legacy Pharmaceuticals International, LLC

Dear Mike:

As a Manager of Legacy Pharmaceuticals International, LLC (together with its subsidiaries, the *"Company"*), I hereby request prompt delivery in electronic format to me (at pdaugherty@hcmlp.com and a copy to Janice Sharry at janice.sharry@haynesboone.com) of the following information:

(i)     a detailed schedule reflecting the Company's cash on hand as of January 23, 2009 (or the latest date for which such information is available) together with detailed analyses of cash flow and liquidity;

(ii)    a detailed schedule of all amounts owing to any lenders as of January 23, 2009 (or the latest date for which such information is available);

(iii)   a detailed schedule of amounts owing to any lessors or other third parties pursuant to existing contracts as of January 23, 2009 (or the latest date for which such information is available);

(iv)    a detailed schedule of the Company's accounts receivable as of January 23, 2009 (or the latest date for which such information is available);

(v)     a detailed schedule of the Company's accounts payable as of January 23, 2009 (or the latest date for which such information is available);

(vi)    the 13-week cash flow projection for the beginning of 2009;

(vii)   the financial report due to the lenders under the Company's credit agreement by February 14, 2009 (in its final form, when available, and also, in its current form);

(viii)  current draft of any financial information being prepared in connection with preparation of the Company's year-end financial information;

(ix)    the most recent version of the proposed 2009 Budget and business plan;

(x)     the most recent version, in Excel format, of detailed monthly 2008 financial performance by location;

Two Galleria Tower ●13455 Noel Road, Suite 800 ●Dallas, TX 75240 ●office: 972 628 4100 ●fax: 972 628 4147

Page No 43



(xi)      a copy of the current member list of the Company, along with a listing of all interests held and addresses;

(xii)      copies of any correspondence between officers of the Company and any of the Company's members (except for Highland Crusader Offshore Partners, L.P. and Highland Credit Strategies Master Fund, L.P.) prior to the date hereof;

(xiii)      a copy of the complete consolidated tax returns for the Company for 2007 and any interim tax returns for the Company in 2008;

(xiv)      a schedule of all benefits paid or to be paid by the Company to you and the other officers, including details on executive salary deferral accounts, appreciation units, dividends, 401(k) contributions, and any other similar arrangements;

(xv)      a list and description of any management incentive programs for the Company and a list of any grants or distributions of membership interests or options thereunder prior to the date hereof;

(xvi)      a list and description and basis for any other issuances of membership interests and any agreements (written or oral) related thereto prior to the date hereof;

(xvii)      a description of any and all transactions during the calendar years 2007, 2008, and to date for 2009, in which the Company has been a party and an officer has had an interest;

(xviii)      a copy of the Company's check registry as of January 23, 2009 (or the latest date for which such information is available);

(xix)      a copy of all expense reports, including without limitation, all travel and entertainment expenses, together with all applicable receipts, a description of expenses, final reimbursement amounts, the name of who approved such reimbursements and a copy of the checks issued in connection therewith;

(xx)      a copy of all minutes of member meetings and manager meetings (or written consents executed in lieu of a meeting), along with copies of any other documents included or referenced therein; and

(xxi)      a copy of the engagement letter between the Company and its external auditors and such auditors' current contact information.

I further request that you deliver this information as it is, or becomes available rather than waiting until you gather all listed information.

Yours sincerely,

Patrick H. Daugherty

cc:      Janice V. Sharry
         R. Thaddeus Behrens
         Joanne Pinckney

Two Galleria Tower ●13455 Noel Road, Suite 800 ●Dallas, TX 75240 ●office: 972 628 4100 ●fax: 972 628 4147

EXHIBIT "3"

January 30, 2009

**Via FedEx**

Legacy Pharmaceuticals International, LLC
959 South Coast Drive, Suite 325
Costa Mesa, CA 92626
Attn: Mike R. Danzi, President/CEO

Re:   Follow-up to Formal Request for Information related to Legacy Pharmaceuticals International, LLC

Dear Mike:

I am disheartened and discouraged that it has been more than three days since you received my letter dated January 26, 2009 (and received by you on January 27, 2009) (the *Original Letter*) formally requesting information related to Legacy Pharmaceuticals International, LLC (together with its subsidiaries, the *Company*), and I have neither received any of the requested information nor received any contact or correspondence from you, acknowledging that you received my letter and were working on getting me the requested information. The information that I requested should be readily available and easily sent. It is information that I, as a Manager of the Company, not only have a right to, but also that is necessary to my position as Manager. This is now my second formal request (although much of the information below has also been requested from you by me and never received) and I expect to receive the requested information as promptly as practicable.

In addition to the information requested in the Original Letter, I hereby request all agreements, arrangements and understandings (oral or written) between the Company and Danzi Capital LLC (or any other of your affiliates) and a detailed schedule of all payments made by, or on behalf of, the Company to Danzi Capital LLC (or any of your affiliates) as of the date hereof together with an explanation of what each such payment was for.

Please have the above information and the information previously requested in the Original Letter delivered to me in electronic format (at pdaugherty@hcmlp.com and a copy to Janice Sharry at janice.sharry@haynesboone.com) and deliver information as it is, or becomes available rather than waiting until you gather all listed information

Yours sincerely,

Patrick H. Daugherty

cc:   Janice V. Sharry
      R. Thaddeus Behrens
      Joanne Pinckney

D-HCMLP_ Pat Follow-up Letter to Danzi for Information_Legacy (01_30_09)(1719944_2)

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
                       ) ss.
COUNTY OF ORANGE )

       I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 2211 Michelson Drive, Seventh Floor, Irvine, California 92612.

       On **February 13, 2009**, I served the foregoing document(s) described as **OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT; DECLARATIONS OF RONALD RUS; JOEL S. MILIBAND AND MICHAEL R. DANZI** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

SEE ATTACHED SERVICE LIST

  ✓   (By Mail) As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

  ___   (By Facsimile) As follows: I caused the above-referenced document(s) to be transmitted to the above-named persons.

  ✓   (By Overnight Mail) As follows: I caused the above-referenced document(s) to be delivered to the above-named persons by overnight delivery service, morning delivery.

  ___   (By Personal Service) As follows: By hand to the office of the addressee noted on the attached service list.

  ___   (By Electronic Transmission (E-Mail)) I e-mailed the above-referenced document(s) as indicated in the parties listed above.

  ✓   (By CM/ECF) to registered ECF Users pursuant to General Order 07-08.

Executed on **February 13, 2009**, at Irvine, California.

  ___   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  ✓   (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
JEANNIE MENDEZ

## SERVICE LIST

1

2   Tom Chen, Esq.                                          VIA OVERNIGHT MAIL
    MacPherson Kwok Chen & Heid, LLP
3   18200 Von Karman, Suite 725
    Irvine, CA 92612
4   Telephone: (949) 752-7040
    Facsimile: (949) 752-7049
5   Email: tchen@macpherson-kwok.com

6
    Clark S. Stone, Esq. '                                           VIA CM/ECF
7   Jason M. Gonder, Esq.
    MacPherson Kwok Chen & Heid, LLP
8   2033 Gateway Place, Suite 400
    San Jose, CA 95110
9   Telephone: (408) 392-9250
    Facsimile: (408) 392-9262
10  Email: cstone@macpherson-kwok.com
           jgonder@macpherson-kwok.com
11

12  Werner A. Powers, Esq.                                        VIA U.S. MAIL
    R. Thaddeus Behrens, Esq.
13  Haynes and Boone, LLP
    2323 Victory Avenue, Suite 700
14  Dallas, TX 75219
    Telephone: (214) 651-5000
15  Facsimile: (214) 200-0672
    Email: werner.powers@haynesboone.com
16         thad.behrens@haynesboone.com

17

18

19

20

21

22

23

24

25

26

27

28